[Civ. No. 20002.   First Dist., Div. Two.   Oct. 18, 1962.]

LINDA CHRISTIAN WEST, a Minor, etc., Plaintiff and Appellant, v. CHARLES A. REIGAL, Defendant and Respondent.

*Assigned by Chairman of Judicial Council.

Johnson, Thorne, Speed & Bamford, John E. Thorne and Richard W. Herz for Plaintiff and Appellant.

Campbell, Custer, Warburton & Britton and George A. Strong for Defendant and Respondent.

AGEE, J.—This is a personal injury action. Plaintiff appeals from the judgment entered herein following a jury verdict for defendant. The sole question before us is whether the trial court should have granted plaintiff's motion for a new trial, based upon the alleged misconduct of the foreman of the jury in answering questions put to him upon his *voir dire* examination.

Plaintiff's motion was supported by the affidavits of one of her attorneys, Mr. Clopton, and her father, Mr. West.

Mr. Clopton related that he approached the foreman, Mr. Stoneman, after the verdict had been rendered, and asked him for an explanation of the verdict and what was the deciding factor in his mind; that Mr. Stoneman replied: " 'The defendant wasn't negligent, but if you want to know my true personal feelings on the matter I'll tell you,' "; that affiant requested a statement of such feelings and Stoneman replied: " 'I think you people are a bunch of ambulance chasers and attorneys such as you should be hung for even bringing cases such as this into Court. You waste the time of a bunch of people on the jury listening to these practiced witnesses in a performance you stage' "; that affiant then had his associate, Mr. Thorne, come over to talk with Mr. Stoneman and the latter stated to Mr. Thorne: " 'It is about time action was taken against a bunch of shysters like you and this was my chance.' "

Mr. West averred that he heard Mr. Stoneman say to Mr. Clopton and Mr. Thorne: " 'It is about time somebody took some action against a bunch of shysters like you and this was my chance' "; that he (Stoneman) further stated that he had been prejudiced against the plaintiff's case even before the trial commenced because he felt that the courts were being used by ambulance chasers in accident cases and that they (the ambulance chasers) should be stopped.

Defendant filed three affidavits in opposition, by Mr. Stoneman (the foreman), Mr. Busch (a juror) and Mr. Britton (defendant's attorney).

Mr. Stoneman averred that Mr. Clopton approached him after the trial and wanted to know the basis of the jury's verdict; that affiant told him that he believed that defendant was not negligent and that this was the basis of his decision; that he further told Mr. Clopton that he thought that plaintiff's case was poorly prepared and poorly presented; that he did not say to Mr. Thorne that, " 'It is about time action was taken against a bunch of chiselers like you and this was my

chance.' '' He further averred: ''That affiant was not prejudiced against plaintiff's case at the outset of the trial nor during the conduct of the trial. . . . That affiant does not have a prejudice against any persons who make claims for injuries nor was he prejudiced against plaintiff nor plaintiff's attorneys in the above entitled action. That he definitely did believe, based entirely upon the evidence presented and the law as instructed by the Court that defendant was entitled to a verdict. That he did not state that he had been prejudiced against the plaintiff's case even before the trial commenced because he felt that the courts were being used by ambulance chasers in these accident cases and that they should be stopped.'' No specific denial was made as to whether affiant made any reference to ''ambulance chasers'' or wasting the time of the jury.

Mr. Busch averred that after the jury retired to deliberate upon a verdict, Mr. Stoneman was selected as foreman at the suggestion of other jurors; that at no time did Mr. Stoneman make any comments in the jury room regarding plaintiff's attorney; that his comments were based entirely upon the evidence which had been admitted and the instructions on the law as given by the court; that, as foreman, Mr. Stoneman gave all of the jurors the opportunity to express their respective opinions and only called for a vote after all of the other jurors had stated that they were ready to vote; that the vote was ten to two in favor of the defendant; that none of the jurors made any statement indicating prejudice against plaintiff or her attorneys or plaintiffs in general.

Mr. Britton averred that after the verdict had been returned, he went outside the courtroom into the hallway and observed Mr. Clopton talking to Mr. Stoneman; that Mr. Clopton was requesting information as to the basis of the jury's verdict; that Mr. Stoneman stated that the defendant was not negligent and that he had had some experience with corporation law and lawyers and that he thought plaintiff's case was poorly prepared and poorly presented; that Mr. Clopton angrily replied that they had talked to all of the witnesses and had brought them into court; that affiant then left the courthouse; that during the time he was present, he did not hear any reference to ''ambulance chasers'' or to wasting the time of the jury. Obviously, he did not and could not state whether any such reference was made before he arrived or after he left.

The record shows that on the *voir dire* examination

of Mr. Stoneman, he stated, in response to questions, that he felt that he could be a fair juror; that he had no prejudice against plaintiffs as a class; that they had a right to come into court and have their cases determined by a jury; that he would decide the case entirely on the basis of the evidence and the law. These and other questions asked of Mr. Stoneman were sufficient to bring out his alleged bias and prejudice if, as claimed by plaintiff, his answers thereto had not been untruthful.

In support of the trial court's ruling, we must assume that any conflicts in the affidavits were resolved by it in favor of the defendant. Stoneman's own affidavit avers that he was not prejudiced against plaintiff's case either at the outset of the trial or during the conduct of the trial and that he had never said anything to this effect; that he believed that the defendant was not negligent and that this was the basis of his decision. The affidavit of the juror Busch shows that Stoneman conducted the deliberations of the jury in a fair and impartial manner and that at no time during such deliberations were any derogatory statements made by anyone concerning the plaintiff's attorneys; that whatever comments the foreman made during the deliberations were based entirely upon the evidence and the instructions on the law; that the vote of the jury was ten to two in favor of the defendant. There is no contradiction of juror Busch's account of what transpired during the jury's deliberations. The affidavit of Attorney Britton is, of course, only to the effect that he did not hear any of the complained of remarks allegedly made by Stoneman.

The trial court had the right and duty to weigh and consider the conflicting affidavits. On the record presented to it, there is no showing that the trial court abused its discretion in concluding that there had not been a sufficient showing of prejudice.

In *People* v. *Thomas,* 108 Cal.App.2d 832, 837 [239 P.2d 914], the court said: "The trial court passed upon the matter and by its denial of the motion for a new trial, determined that the alleged misconduct of the juror was not prejudicial. There is no showing of abuse of discretion. Under such circumstances, the trial court's decision will not be disturbed on appeal." (See also: *Dunford* v. *General Water Heater Corp.,* 150 Cal.App.2d 260, 266 [309 P.2d 958]; *DeWit* v. *Glazier,* 149 Cal.App.2d 75, 81-83 [307 P.2d 1031]; *Spadoni* v. *Maggenti,* 121 Cal.App. 147, 156 [8 P.2d 874].)

As stated above, the jury voted ten to two in favor of defendant and the affidavit of Mr. Busch, which is uncontradicted, shows that the deliberations of the jury were confined to the evidence and the law as given to it in the court's instructions. There is no showing that Mr. Stoneman attempted to dominate the other jurors or in any way influence them in an improper manner. ▆▆▆ Assuming that Mr. Stoneman was prejudiced against plaintiff, as claimed, it still remains the burden of plaintiff to affirmatively show that prejudice resulted therefrom.

In *Irvin* v. *Padelford*, 127 Cal.App.2d 135, 139-140 [273 P.2d 539], the court said: "There was another reason the trial court properly denied the motion for a new trial. There was no showing of prejudice resulting to defendant Padelford from Mrs. McManus' answer on her *voir dire* examination. This is a prerequisite to the granting of a new trial predicated upon the alleged misconduct of a juror. [Citation.]

"In the present case it appears that the jury was polled after the verdict in favor of plaintiff and the poll showed ten 'yes' and two 'no' votes. It is therefore evident that since only nine 'yes' votes were necessary to secure a verdict for plaintiff, even though Mrs. McManus had voted the other way the verdict would still have been for plaintiff. Hence no prejudice resulted from any irregularity arising out of her *voir dire* examination."

In *La Gue* v. *Delgaard*, 138 Cal.App.2d 346, 348 [291 P.2d 960], it was said: "In the instant case, no prejudice has been shown. The burden of showing such prejudice rests upon the appellant. As mentioned in the respondents' brief, the juror's statements were not made during the course of the trial; the verdict rendered was 10 to 2 in favor of the defendant, and such verdict is amply supported by substantial evidence. Regardless of Juror Fitch's alleged misconduct, there is nothing to indicate that the rights of the plaintiff to a fair trial were in any manner prejudiced. There is therefore no reason to disturb the trial court's finding in this respect."

The trial court, in a memorandum opinion, stated: "There is nothing in the record to indicate that any of the other nine jurors voting in favor of the defense verdict considered in their deliberations or in their voting on a verdict anything but the evidence and the applicable law."

▆▆▆ The trial court also pointed out that "a party moving for a new trial on the grounds of irregularity in the jury's proceedings must show affirmatively that neither he nor his

counsel know [*sic*] of the facts constituting the claimed misconduct before rendition of the verdict." (Citing *Crespo* v. *Cook,* 168 Cal.App.2d 360 [336 P.2d 31] ; *Dunford* v. *General Water Heater Corp.,* 150 Cal.App.2d 260 [309 P.2d 958] ; *Forman* v. *Alexander's Markets,* 138 Cal.App.2d 671 [292 P.2d 257].)

Plaintiff's counsel has attempted to remedy this defect by sending to this court a letter "in support of Appellant's Opening Brief." He states therein, "under penalty of perjury," that he was first advised of Mr. Stoneman's alleged prejudice after the return of the verdict. The letter was written some eight months after the time to file affidavits with the trial court had elapsed. (Code Civ. Proc., § 659a.)

Plaintiff's counsel apparently realizes that we cannot consider this letter as a part of the record but states that it is "to qualify for an affirmative showing . . . that attorney for the appellant had no knowledge of the misconduct either prior or during the trial." *Crespo* v. *Cook, supra,* directly holds that such a showing must be made before the trial court within the time prescribed by law and that an appellate court cannot accept the offered proofs under such circumstances.

For the foregoing reasons, the judgment is affirmed. The purported appeal from the order denying a new trial is dismissed, it not being an appealable order.

Kaufman, P. J., and Shoemaker, J., concurred.

A petition for a rehearing was denied November 5, 1962, and appellant's petition for a hearing by the Supreme Court was denied December 12, 1962.