[No. B015331. Second Dist., Div. Three. Dec. 24, 1986.]

In re the Marriage of ALICE NAVARRO and
RAYMOND C. OLIVAREZ.
ALICE NAVARRO OLIVAREZ, Respondent, v.
RAYMOND C. OLIVAREZ, Respondent;
LOS ANGELES COUNTY MEAT PACKING INDUSTRY AND
BUTCHERS UNION, LOCAL 563, AFL-CIO PENSION PLAN et al.,
Appellants.

## COUNSEL

Cox, Castle & Nicholson, James P. Watson, Herbert J. Klein and Lionel Richman for Appellants.

No appearance for Respondents.

## OPINION

**DANIELSON, J.**—Los Angeles County Meat Packing Industry and Butchers Union, Local 563, AFL-CIO Pension Plan and Butchers Provision Workers Pension Fund of Southern California (Trusts) appeal from an order of the court dated May 14, 1985, awarding attorney's fees and costs in favor of Alice Navarro Olivarez (Alice) against the Trusts.[1]

### FACTUAL AND PROCEDURAL STATEMENT

In the judgment of dissolution of the marriage of Alice and Raymond C. Olivarez (Raymond), Alice was awarded one-half of Raymond's earned pension credits and Raymond was also ordered to make spousal support payments to her.

Prior to October 25, 1984, Alice filed an application for an order to show cause why she should not be entitled to execute the judgment, for spousal

---

[1] Alice has filed no brief. In our discretion we could deem the Trusts' position to be well-founded and automatically reverse. (*Berry* v. *Ryan* (1950) 97 Cal.App.2d 492, 493 [217 P.2d 1015].) However, we will examine the record in light of the points raised and reverse only if reversible error is found. (*Votaw Precision Tool Co.* v. *Air Canada* (1976) 60 Cal.App.3d 52, 55 [131 Cal.Rptr. 335]; *In re Marriage of Schultz* (1980) 105 Cal.App.3d 846, 853 [164 Cal.Rptr. 653].)

support arrearages, against Raymond's share of the pension credits. In her supporting papers Alice asserted that Raymond quit his job, applied for retirement benefits, and disappeared. She also claimed that the pension benefits at issue are the only assets from which she could satisfy the judgment.

In their opposition papers filed October 25, 1984, the Trusts took the position that an order assigning Raymond's share of the pension benefits to Alice would be preempted by the Employee Retirement Income Security Act (ERISA) unless it was a "qualified domestic relations order" that was entered on or after January 1, 1985.

On or about January 24, 1985, Alice served and filed a proposed order on her order to show cause.

On February 22, 1985, a hearing was held on the propriety of the proposed order on the order to show cause.

At a later hearing on April 2, 1985, Alice moved orally for an award of attorney's fees and costs which would arise in conjunction with the above order. At the hearing Alice's attorney argued that the criteria for an award of fees against a trustee of a pension fund under ERISA, which are set forth in *Hummell* v. *S.E. Rycroft & Co.* (9th Cir. 1980) 634 F.2d 446, 453, were inapplicable and that, instead, the court was required to follow Civil Code section 4370.

She asserted that to that date her accumulated attorney's fees and costs amounted to $2,300. She further asserted that such fees and costs should be assessed against the Trusts for the reason that Alice was unemployed and Raymond had totally disappeared.

In response the Trusts' attorney acknowledged that "[o]pposing counsel is correct that the Pension Trusts do not deny the fact that a participant, which [Alice] is pursuant to 29 USC Section 1132, . . . is entitled to award of attorney's fees." He asserted that "[t]he only dispute. . . appears to be . . . how does the Court award attorney's fees. . . . 29 USC Section 1132(G)(1) . . . indicates that the Court in its discretion may order attorney's fees on an action brought by a participant which is clearly this case." He added that "[t]his is a federal statute . . . which pursuant to its own sections indicates that it preempts all other state laws that have a relation to or an effect upon pension plans. [¶] [Specifically,] Civil Code Section 4370 which allows state courts to issue attorney's fees against any Pension Trust that is joined in a family law matter is necessarily preempted by ERISA and Section 1132(G)(1)." He concluded by arguing that in applying the

*Hummell* criteria to the present case the court would find no evidence to support an award against the Trusts.

On April 18, 1985, the court made its order assigning 65 percent of the pension/retirement benefits presently being paid or payable to Raymond from the Trusts to Alice directly as and for partial payment of court-ordered spousal support.

On May 14, 1985, the court awarded Alice attorney's fees and costs in the sum of $2,300. In so doing, the court based its award on the fact that this was a family law action. The court expressly stated that there was no preemption by ERISA, that it had discretion to consider the Family Law Act, and that it could therefore base its award on Alice's need for such fees, the Trusts' ability to pay, and the necessity for Alice to maintain the action. Alice was to recover attorney's fees and costs in the sum of $2,300 from the Trusts.

## DISCUSSION

The Trusts take the position that Alice is not entitled to an award of attorney's fees either under ERISA or pursuant to Civil Code section 4370.[2]

Initially, they maintain that the court awarded the fees under ERISA. We disagree. Although the reporter's transcript reflects that the court did discuss an award of fees under ERISA, mentioning the criteria set forth in *Hummell, supra,* 634 F.2d 446, a careful reading of that record reveals that the court did not in fact base its award on ERISA. Instead, section 4370 was the basis of its award.

The Trusts further contend that section 4370 cannot be the basis of the subject award, because of ERISA preemption. In pertinent part ERISA

---

[2]Except as otherwise specified, all further statutory references are to the Civil Code.

In pertinent part section 4370 provides: "(a) During the pendency of any proceeding under this part, the court may order any party, except a governmental entity, to pay such amount as may be reasonably necessary for the cost of maintaining or defending the proceeding and for attorneys' fees . . . . In respect to services rendered or costs incurred after the entry of judgment, the court may award such costs and attorneys' fees as may be reasonably necessary to maintain or defend any subsequent proceeding, and may augment or modify any award so made, including after any appeal has been concluded. . . . Any order for a party who is not the husband or wife of another party to the proceedings to pay attorneys' fees or costs shall be limited to an amount reasonably necessary to maintain or defend the action on the issues relating to that party.

" . . . . . . . . . . . . . . . . . . .

"(d) *Notwithstanding* any other provision of law, absent good cause to the contrary, the court, upon determining an ability to pay, shall award reasonable attorneys' fees to a supported spouse in any action to enforce an existing order for spousal support."

declares that "this chapter shall supersede any and all state laws insofar as they may now or hereafter *relate to* any employee benefit plan described [herein] . . . ." (29 U.S.C. § 1144(a), italics added.)

 They concede that California community property law does not "relate to" the subject plan to the extent that Alice claims a community property interest in Raymond's plan benefits. (See, e.g., *In re Marriage of Johnston* (1978) 85 Cal.App.3d 900, 912 [149 Cal.Rptr. 798]; *In re Marriage of Campa* (1979) 89 Cal.App.3d 113, 125-131 [152 Cal.Rptr. 362].) They point out, however, that Alice had already received her community property interest in such benefits, and thus, the basis of her claim against Raymond's share of the benefits is not that of owner but only that of a creditor.

 They also acknowledge that Alice, as a creditor, was entitled to garnish Raymond's portion of the subject benefits to satisfy support arrearages. In their opposition to the order to show cause the Trusts took the position that an assignment of benefits to Alice for such purpose would be valid only if it were pursuant to a "qualified domestic relations order" that was entered on or after January 1, 1985, the date when an amendment to ERISA expressly allowing for such an assignment became effective. (See § 104, subsec. (a) of the Retirement Equity Act of 1984 (Act).) They do not attack the propriety of the spousal support order entered April 18, 1985, which assigned 65 percent of Raymond's share of the benefits to Alice.[3]

The Trusts point out, however, that ERISA does not expressly allow for an assignment of benefits to satisfy an award of attorney's fees which were incurred to obtain the "qualified domestic relations order" for spousal support. Based on the absence of such express allowance they assert that such an assignment therefore is barred by ERISA's preemption provision (29 U.S.C. § 1144(a)) and its proscriptions against assignments or alienation of pension benefits. (29 U.S.C. §§ 206(d)(1), 1056(d)(1).) The Trusts then conclude that no award of attorney's fees pursuant to Civil Code section 4370 is permissible.

We find no merit to the Trusts' contentions.

---

[3]The Trusts did not in fact appeal from that assignment order. Their sole objection to the order as originally proposed was that the requested "assignment of more than 65% of [Raymond's] pension benefits ... is in violation of California Code of Civil Procedure Section 706.052(a)." We note that in the recitation of facts in their appellate brief the Trusts mention that Alice was nonetheless awarded $2,300 for costs and attorney's fees in addition to that assignment of benefits. However, we further note that to the extent that they claim error in this regard the Trusts have failed to set forth any argument or cite any authority in support. We therefore deem the point to be without merit. (*Strutt* v. *Ontario Sav. & Loan Assn.* (1972) 28 Cal.App.3d 866, 873-874 [105 Cal.Rptr. 395]; *Ward* v. *Litowsky* (1970) 5 Cal.App.3d 437, 439 [85 Cal.Rptr. 278].)

The fallacy of their position is their assumption that ERISA preempts an award of attorney's fees under section 4370. Preemption in this instance turns on whether that section "relate[s] to" the subject employee benefit plan. We find that it does not.

In enacting ERISA "Congress, in essence, aimed at assuring that pension rights are real—that new employees are not kept from participating in a plan for a long time and that expected benefits do not evaporate due to underfunding, maladministration, a company going out of business or a termination of employment after many years of work. The preemption claim and ERISA's section 1144(a) must be viewed in this setting. By section 1144(a) Congress clearly wanted to protect the standards and safeguards which it had created against state interference. [Citation.]" (*In re Marriage of Campa, supra,* 89 Cal.App.3d 113, 123; see also, *In re Marriage of Johnston, supra,* 85 Cal.App.3d 900, 906-907.)

The pivotal question therefore is whether section 4370 constitutes "such interference—whether, in other words, [it would] frustrate or contravene what Congress intended to do and did." (*Campa, supra,* 89 Cal.App.3d, at p. 123.) If the intent of Congress in enacting the federal statute is not violated by application of California's community property laws, then California law applies. (*Hisquierdo* v. *Hisquierdo* (1978) 439 U.S. 572, 581 [59 L.Ed.2d 1, 10-11, 99 S.Ct. 802].)

Our analysis begins with a dissection of the purposes behind the pertinent provisions of section 4370. Initially, we point out that the primary function of subdivision (d) is to empower a family law court to award a supported spouse "reasonable attorneys' fees. . . in any action to enforce an existing order for spousal support." The purpose behind such an allowance is to enable a supported spouse to secure adequate representation to prosecute the proceeding and to meet all reasonable legal fees which may be incurred. (See *In re Marriage of Pallesi* (1977) 73 Cal. App.3d 424, 428 [140 Cal. Rptr. 842]; see also *Crook* v. *Crook* (1960) 184 Cal. App.2d 745, 749 [7 Cal.Rptr. 892]; *Warner* v. *Warner* (1950) 34 Cal.2d 838, 840 [215 P.2d 20].)

Prior to 1981, Civil Code section 4370 explicitly restricted the court's authority to order payment of attorney fees to orders against "the husband or wife or father or mother, as the case may be." In *In re Marriage of Reyes* (1979) 97 Cal.App.3d 876 [159 Cal. Rptr. 84], the court held that there was no case authority in California which would authorize a trial court to order any party other than those expressly enumerated above to pay attorney's fees. (*Id.,* at pp. 878-879.) The *Reyes* court concluded that the trial court therefore correctly denied the wife's motion for attorney's fees against

her husband's trust fund. (*Id.,* at p. 879.) The *Reyes* court then observed that "[s]ince the Legislature as of January 1, 1978, saw fit to make joinder of a pension plan as a party to marital litigation mandatory in order to have the court's judgment enforceable as against the pension plan (Civ. Code, § 4351) and because of the common financial disparity between such a plan and a marital litigant to employ and pay counsel, it would be a logical step for the Legislature to authorize fees and costs to be assessed against such a party. However, the Legislature has not done so, and it is properly within its prerogative to make this type of policy decision." (*Id.,* at pp. 879-880.)

The Legislature amended section 4370 in 1981 deleting the above quoted language from former section 4370 and in its place substituted language permitting the court to order any party, other than a governmental entity, in a proceeding under the Family Law Act, to pay reasonable costs and attorneys' fees, albeit "[a]ny order for a party who is not the husband or wife of another party to the proceedings to pay . . . shall be limited to an amount reasonably necessary to maintain or defend the action on the issues relating to that party."

It is clear from the foregoing that the Legislature intended to empower a family law court in a case such as this to assess attorney's fees and costs against a pension fund where the supported spouse was compelled to seek a court order for the garnishment of the other spouse's remaining pension benefits in order to satisfy an existing support order.

An order compelling the Trusts to pay Alice's reasonable attorney's fees "plainly has no bearing on the effort of Congress, embodied in ERISA, to assure genuine pension rights" (*Campa, supra,* 89 Cal.App.3d, at p. 124); it does not relate to the functioning or management of the pension plan.

Moreover, "[t]he integrity of pension funds remains unaffected. They do not pay out one cent more than their plans call for." (*Id.,* at pp. 124-125.) Although the subject order does not specify the source from which the Trusts are to satisfy the attorney's fee award, the only proper source was, of course, Raymond's remaining pension benefits. Therefore, we hold that the court was ordering the Trusts to pay the fees from those benefits and will modify the order of May 14, 1985, accordingly.

We therefore conclude that an order under section 4370 directing a pension fund to pay a supported spouse's reasonable attorney's fees incurred to enforce an existing support order from the other spouse's remaining pension benefits does not "relate to" an employee benefit plan. As explained by the court in *In re Marriage of Williams* (1985) 163

Cal.App.3d 753 [209 Cal. Rptr. 827], "garnishment under the California Family Law Act does not seek to regulate the employee benefit plan; rather, it is merely used to satisfy spousal support obligations once the right to disability benefits in a settled amount and in accordance with the provisions of the fund has already been determined. The garnishment does not 'relate to' an employee benefit plan as required for preemption under 29 United States Code section 1144(a)." (*Id.,* at p. 764; cf. *Phillipson* v. *Board of Administration* (1970) 3 Cal.3d 32, 44, 46-47 [89 Cal.Rptr. 61, 473 P.2d 765].)

We find no significance in the fact that Congress amended ERISA specifically to exempt "qualified domestic relations orders" from its provisions, but did not include a similar exemption for orders awarding attorney's fees incurred to obtain such orders.

Prior to that amendment, "federal courts [had] specifically approved of garnishment of ERISA pension plan benefits by writ of execution [see § 4380] to satisfy support arrearages." ( *Williams, supra,* at p. 762; see also, *Operating Engineers, etc.* v. *Zamborsky* (9th Cir. 1981) 650 F.2d 196, 200.) The *Williams* court essentially found that California courts have concurrent jurisdiction in such matters. (*Williams, supra,* at p. 764.)

"The objective of the Act, [which added the subject amendment], is to clarify existing law, acknowledged to be divergent, by creating a specific limited exception that permits pension benefits to be divided under certain well-defined guidelines. The legislative history of the Act does not condemn former case law permitting distribution of pension benefits to former spouses to satisfy spousal support obligations; rather, it merely recognizes the need for uniform standards." (*Williams, supra,* at pp. 765-766.)

With regard to awards of attorney's fees incurred to obtain support arrearages, however, there is apparently no "need for uniform standards" since, at present, there is no divergence in the law concerning the propriety of assessing them against pension funds in the situation where the other spouse's remaining funds are applied to the satisfaction of such arrearages. This case is in fact one of first impression. We hold that the Congress did not include an exemption for such attorney's fees awards since the need for uniform standards in that regard has not arisen.

DECISION

The trial court's order of May 14, 1985, is modified by striking the words "not later than June 2, 1985," and inserting in lieu thereof the following, "from any pension or retirement benefits in their custody or control being paid or payable to respondent Raymond C. Olivarez." As modified the

order appealed from is affirmed. Each party shall bear its own costs on this appeal.

Klein, P. J., and Hom, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.